**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DIANE P STEVENS, ET AL. | CIVIL ACTION |
| VERSUS | NO. 13-5102 |
| ALLSTATE INSURANCE COMPANY | SECTION "L" (4) |

## <u>ORDER & REASONS</u>

Before the Court is Defendant Allstate Insurance Company's motion for summary judgment. (Rec. Doc. 20). Having considered the parties' memoranda and the applicable law, the Court now issues this order.

### I.      UNCONTESTED FACTS

This action arises out of a flood insurance claim made by Plaintiffs Diane and Bobby Stevens for damage their house sustained during Hurricane Isaac. The property, which is located in LaPlace, Louisiana, was inundated with about a foot of water for approximately a day. The Stevens' insurer, Allstate, is a write-your-own program ("WYO") carrier participating in the National Flood Insurance Program ("NFIP"), and it issued a standard flood insurance policy ("SFIP"). The SFIP covers a term lasting from November 22, 2011, to November 22, 2012, and has coverage limits of $165,000.00 for structural damage and $26,300.00 for contents damage, each of which is subject to a $1,000.00 deductible.

After the Stevens submitted a claim, Allstate initiated the adjustment process. In doing so, it assigned an independent adjuster, Rich Christie, through Pilot Catastrophe Services, who inspected the property on September 7, 2012. Specifically, the estimate included cost of replacing drywall, doors, trim, vinyl windows, the water heater, electrical outlets, several

refrigerators, a stove, a fireplace, insulation, countertops, cabinets, a bathtub, a shower, blinds, doors, and part of a garage door. It also included the cost of services for remodeling, demolition, drying out the house, and eradicating mold. Based on the adjuster's estimate, Allstate paid the Stevens $84,132.76 for structural damage. (It also paid them $21,300.00 for contents damage, which is the policy limit.) Subsequently, the Stevens and Allstate both sought additional estimates. Kevin Manale, hired by the Stevens, provided an estimate of $89,499.80 and John Crawford, hired by Allstate, provided one of $96,422.60.

The Stevens used the funds that had been paid to conduct some essential repairs. They have produced documentation of $49,711.94 spent on repairs, but state that they are unable to document the remainder of what was spent (although they allege that they spent the entire amount Allstate paid).[1] The Stevens state that they do not know exactly how much they have spent on repairs, nor do they know exactly how much will need to be spent.

## II.   PRESENT MOTION

Allstate now moves for summary judgment. (Rec. Doc. 20). Specifically, Allstate argues that the amount the Stevens spent on repairs is less than the amount it paid them and that its liability should not be determined by an estimate when the actual amount is known. Further, Allstate argues that the Stevens bear the burden of proving that the actual amount of damage was greater than the amount paid and that the Stevens are unable to meet this burden.

The Stevens respond in opposition. (Rec. Doc. 26). Specifically, they note that Allstate's second estimate demonstrates that they were underpaid by $13,298.84 and that other estimates may indicate they were underpaid by an even greater amount. In addition, they suggest that the "builder board," which sits between the brick veneer and studs, was contaminated during the

---

[1] They also have indicated that they largely performed the repairs themselves.

flood and must be replaced, increasing the amount of structural damage. In sum, they argue that, even though they did not document all of their repairs, those repairs would exceed what Allstate paid and also that there are additional repairs yet to be made.

Allstate replies. (Rec. Doc. 32). It argues that the Stevens "do not dispute that their home has been completely repaired (except for three doors)" or "any of the facts" in its motion for summary judgment. (*Id*. at 2). With regard to the builder board, it suggests that, if the repairs are complete, "it is obvious that this work will never be done." (*Id*. at 3). Further, it states: "A claim for the [builder board] is in every single one of [the Stevens' attorney's] cases. Every one. Its sole purpose is to pay the fees of the attorney and public adjuster." (*Id*. at 3 n.4). Next, it argues that the proof-of-loss requirement, which is dispositive of a claim, "hold[s] the exact same legal status" as the language allowing payment of the amount actually spent because both are contained "within the exact same section of the SFIP (Article VII – General Conditions)." (*Id*. at 4). Additionally, Allstate argues, again, that the Stevens have "not even specif[ied] repair costs for which they claim to have 'lost' receipts," and thus are only entitled to those costs for which they have receipts and which is less than the amount already paid by Allstate. (*Id*. at 5). Nor, it argues, have the Stevens provided any specifics about the "'substantial flood damages' not yet repaired." (*Id*. at 7). Last, Allstate contends that any estimate is irrelevant in assessing structural damage "because only the homeowners know what they actually repaired." (*Id*. at 8).

## III.   LAW & ANALYSIS

### A.   Standard

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial

burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the non-moving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster,* 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the non-movant. *Id.* at 255.

    **B.**    **Analysis**

    Here, it is necessary to consider the SFIP that was issued by Allstate to the Stevens. SFIPs are governed by statute and Federal Emergency Management Agency ("FEMA") regulations. *Worthen v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 463 F. App'x 422, 426 (5th Cir. 2012) (citing 42 U.S.C. § 4011(a)). Any interpretation of those regulations by FEMA also governs, as long as that interpretation is not inconsistent with the regulations or plainly erroneous. *Id.* (citing *Stinson v. United States*, 508 U.S. 36, 45 (1993)). SFIPs must be "'strictly construed and enforced.'" *Id.* (quoting *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir.1998)). "In addition, the insured is charged with constructive knowledge of the policy provisions and of the NFIP . . . 'regardless of actual knowledge of what is in the [r]egulations or of the hardship

4

resulting from innocent ignorance.'" *Id.* (quoting *Fed. Crop. Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947) (alteration in original))). Although federal law governs SFIPs, "general principles of state insurance law may be useful" in interpreting them. *Id.* at 425. Those general principles include:

> (1) if the language of a policy is clear and unambiguous, it is accorded its natural meaning; (2) if the meaning of a policy provision is susceptible to different constructions, the one most favorable to the insured prevails; (3) insurance contracts are to be reasonably construed in accordance with the objective and intent of the parties; (4) in determining the most reasonable construction of contested provisions, the court may draw from the provisions, the policy as a whole, and the apparent objectives of the parties in entering the contract; and (5) in the end, if the meaning of the policy terms remains unclear, the policy is generally construed in the insured's favor to promote the policy's objective of providing coverage.

*Id.* at 425–26.

Although the SFIP issued to the Stevens by Allstate "provides three methods for settling losses," only the "replacement cost" provision is applicable in this instance. *See* 44 C.F.R. pt. 61, app. A(1), art. V(1). That provision is something of a misnomer in that it incorporates both a "replacement cost" approach and an "actual cash value" approach in settling claims.[2] It provides:

> The following loss settlement conditions apply to a single-family dwelling . . . :
>
> (a)    [The insurer] will pay to repair or replace the damaged dwelling after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

---

[2] Customarily, the actual cash value approach allowed immediate payment regardless of whether repairs had been made or would be made, whereas the replacement cost approach allowed payment only after repairs had actually been made. *See Need for Replacement to Actually Be Made*, 12 COUCH ON INS. § 176:59 (3d ed.). Stated differently, the actual cash value approach is unlike the replacement cost approach because it "makes the insured responsible for bearing the cash difference necessary to replace old property with new property." *Introduction; Types of Provisions*, 12 COUCH ON INS. § 176:56 (3d ed.). Further, the replacement cost may well exceed the actual cash value. *Id.*

(1) The building limit of liability . . . ;

(2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality and for like use; or

(3) The necessary amount actually spent to repair or replace the damaged part of the dwelling for like use.

 . . . .

(c) When the full cost of repair or replacement is more than $1,000, or more than 5% of the whole amount of insurance that applies to the dwelling, [the insurer] will not be liable for any loss under [subsection (a)] above . . . unless and until actual repair or replacement is completed.

(d) [The insured] may disregard the replacement cost conditions above and make claim under this policy for loss to dwellings on an actual cash value basis. [The insured] may then make claim for any additional liability according to [subsections (a) and (c)] above, provided [the insured] notif[ies the insurer] of [their] intent to do so within 180 days after the date of loss.

*Id*. art. VII(V)(2)(a)-(d).

Allstate asserts that its liability to the Stevens arises under subsection (a), without considering the other applicable subsections.[3]  In particular, subsection (c) provides that, if the repair or replacement cost is more than $1,000.00 or more than 5% of the policy limit, an insurer's liability for that cost under subsection (a) will not accrue "unless and until actual repair or replacement is completed." *Id*. art. VII(V)(2)(c). For this reason, Allstate's interpretation of subsection (a) appears to be flawed, because subsection (a) is only applicable *after* the repair or replacement has been completed.[4] As estimated by Allstate, the replacement cost of the damaged

---

[3] Neither subsection (b), which addresses circumstances where a "dwelling is rebuilt at a new location," nor subsection (e) are applicable here. *Id*. art. VII(V)(2)(b), -(2)(e).

[4] Subsection (a) permits the payment of the lesser of these amounts: first, the policy limit; second, "[t]he replacement cost of that part of the dwelling damaged, with materials of like kind and quality and for like use"; and third, "[t]he necessary amount actually spent to repair or replace the damaged part of the dwelling for like use." 44 C.F.R. pt. 61, app. A(1), art. VII(V)(2)(a). Setting aside the first condition, the distinction between the others cannot be, as Allstate suggests, that the second condition is used to determine the cost *before* the repair or replacement occurs and the third applies *after*. Subsection (c) precludes consideration of *any* of these conditions unless and until the repair or replacement is complete, therefore each must apply *after* the repair or replacement occurs.

part of the Stevens' house exceeds both $1,000.00 and $8,250.00 (that is, 5% of the $165,000.00 policy limit). Further, there is evidence and testimony to suggest that the replacement is not entirely complete. Accordingly, Allstate is not yet liable to the Stevens for the replacement cost under subsection (a). Thus, summary judgment is inappropriate under subsection (a).

That said, there may be another basis for its liability. Specifically, subsection (d) permits an insured to "disregard the replacement cost conditions [in subsections (a) and (c)] and make a claim . . . for loss to dwellings on an actual cash value basis." *Id*. art. VII(V)(2)(d). The term "actual cash value" means the repair or replacement cost "less the value of physical depreciation." *Id*. art. II(B)(2). Under subsection (d), an insured may make a claim and receive the actual cash value of the damaged property immediately after the damage occurs. If the insured does not intend to repair or replace that property, the insurer's liability will have been entirely resolved. If the insured does intend to repair or replace it (and notifies the insurer of that

---

Instead, there must be some other distinction that exists. Importantly, the second condition contemplates the repair or replacement of the damaged part of the dwelling "*with materials of like kind and quality* and *for like use*," whereas the third condition contemplates the same merely "*for like use.*" *Id*. art. VII(V)(2)(a). The principle *unius est exclusio alterius*—that is, the expression of one thing necessitates the exclusion of the other—dictates that the phrase "with materials of like kind and quality" is intended to apply to the second condition and not the third. *Couch on Insurance* bolsters this reading, explaining that, "[w]hen the provision provides alternate recoveries, and only one specifically contemplates similarity and the like, that requirement is not imported into the other alternatives." *Similarity Between Original and Replacement Property*, 12 COUCH ON INS. § 176:65 (3d ed.). The other significant difference between the second and third conditions is that the latter uses the phrase "necessary amount actually spent" to describe the amount, whereas the second condition does not. In addition to the language itself, it is useful to consider the purpose of subsection (a), which is to hold the insurer's liability for the repair or replacement cost to the lesser amount.

Considering all this, the meaning of the second and third conditions is apparent. The second condition limits the insurer's liability to an *estimated* cost, calculated with materials of *like* kind and quality, instead of an imprudent insured's *actual* cost, amassed using materials of *better* kind and quality. For this reason, the term "actually spent" is omitted from the second condition because that condition only considers what the insured *should* have spent, not what the insured *actually* spent. The third condition limits the insurer's liability to the insured's *necessary*, actual costs. This condition seems to contemplate a situation in which the estimated cost under the second condition is larger than the actual cost, but where the actual cost includes some costs not covered by the policy. For instance, a situation in which an insured has repaired the damaged part of their house using materials of *worse* kind and quality and then made improvements to undamaged part of their house. In such an instance, the insurer's liability may be limited to the *necessary* amount actually spent, not the amount actually spent. Thus, the term "necessary" is inapplicable to the second condition, which contemplates the estimated cost of repairing or replacing the damage.

intent within 180 days after the damage occurs), the insured may then make another claim for the difference between the actual cash value, under subsection (d), and the repair or replacement cost, under subsection (a). Although Allstate may later become liable to the Stevens for the replacement cost, it is currently only liable to them for the actual cash value.

Allstate argues that, because it paid the estimated replacement cost, only the conditions of subsection (a) apply. Ignoring the fact that there is nothing to suggest Allstate intended to make that payment pursuant to subsection (a), subsection (c) clearly indicates that an insurer's liability for the replacement cost does not accrue until after that replacement is complete. Whatever Allstate called that payment, it must have been made under subsection (d) and been a payment for actual cash value of the damaged part of the property. At the time the damage occurred, Allstate estimated that the replacement cost would be $90,731.76 and, by subtracting $14,231.56 in depreciation, it estimated the that the actual cash value was $76,500.20. (Rec. Doc. 20-7 at 4). Taking the actual cash value of $76,500.20, it then subtracted the $1,000.00 deductible and added $8,632.56 in "recoverable" depreciation to reach $84,132.76, which was the amount it paid to the Stevens. (*Id*.).

For Allstate to prevail in a motion for summary judgment, it must demonstrate that there is no genuine issue that the actual cash value is less than the amount it paid.[5] Because the actual

---

[5] Allstate seems to suggest that the Stevens, not it, carry the burden of proof. In so suggesting, Allstate draws not from the precedent of the United States Eastern District of Louisiana or the United States Court of Appeals for the Fifth Circuit, but instead from a report and recommendations by a special master in the United States District Court for the District of Maryland. That may be so at trial, however it is not with regard to summary judgment. In considering a motion for summary judgment, the facts are construed in the view most favorable to the non-movant (that is, the Stevens). Accordingly, any genuine issue of material fact will preclude summary judgment. That said, if the movant has established an absence of any evidence or testimony supporting the non-movant's claim, the non-movant bears the limited burden of "identify[ing] evidence [or testimony] showing a genuine issue of material fact sufficient to preclude summary judgment." *Williams v. Allstate Indem. Co.*, 359 F. App'x 471, 474 (5th Cir. 2009). At trial, the Stevens will need to establish the actual or estimated costs for which they seek additional recovery from Allstate beyond what it has already paid. On summary judgment, the Stevens merely need to identify some evidence or testimony in support of their claim for additional recovery beyond what was already paid.

cash value is ordinarily determined soon after damage occurs, it ordinarily is established via an estimate. The Stevens allege they have spent—and will need to spend—even more to restore the structure than the actual cash value that was paid by Allstate. Although they do not have documentation for everything they have spent so far, they have supplied testimony and evidence that demonstrates there is—at least—an issue of fact as to whether Allstate underpaid them for the actual cash value of the damaged part of their house.

Precedent makes clear that it is possible for the Stevens to rely on an estimate, as well as evidence and testimony, in establishing the actual cash value of the damaged part of their house. For instance, in *Williams v. Allstate Indemnity. Co.*, an insured sought an additional payment on its claim because repair costs had exceeded what the insurer had already paid. 59 F. App'x 471, 474 (5th Cir. 2009). The United States Court of Appeals for the Fifth Circuit found that summary judgment was appropriate where the only evidence or testimony the insured had provided merely established that a fraction of that amount had been spent on repair costs. *Id*. Without more, the insured was unable to overcome the insurer's assertion that there was an absence of any evidence or testimony showing a genuine issue of material fact sufficient to defeat summary judgment. *Id*. In fact, the insured had also provided an estimate prepared by an expert and an affidavit that it could "not precisely estimate the structure damage loss but . . . that, despite spending all the money from [the insurer], [they had 'run'] out of money to complete the repairs.'" *Id*.  However, the Fifth Circuit did not consider the affidavit or estimate because each had been excluded by the district court.

Allstate relies on *Lacroix v. State Farm Fire & Casualty Co.* as support for the proposition that, once repairs are complete, estimates become irrelevant. No. 09–0609, 2010 WL 2265577 (E.D. La. June 2, 2010) (Duval, J.). However, in *Lacroix*, another section of this Court

considered a motion in limine—not, as here, a motion for summary judgment—and decided to exclude part of an estimate prepared by an expert. Although it found the expert's "failure to consider the actual cost of the [interior] repairs . . . or to explain why those costs were not relevant in estimating the [interior] damages [was] troubling," it was careful to explain that "those failures [did] not render his methodology unreliable." *Id*. at *4. Instead, it premised its decision to exclude that part of the estimate because the party offering the estimate "conceded that the [interior] repairs . . . had been completed" and further "did not assert that the [interior] repairs as completed had not restored the home to its condition prior to the storm." *Id*. Thus, it excluded the part of the estimate concerning interior damage, which the parties agreed had been completely repaired, but allowed the part concerning exterior damage "which ha[d] not been repaired."[6] *Id*.

In *Hillard v. Bankers Specialty Insurance*, yet another section of this Court addressed a more analogous situation to that which is presented here. No. 13–0200, 2013 WL 5961104, *2 (E.D. La. Nov. 7, 2013) (Lemmon, J). In *Hillard*, the insured "paid less to repair her house than the amount [the insurer] paid her for the damage, and the policy cap[ed] recovery at 'the necessary amount actually spent to repair or replace the damaged part of the dwelling for like use.'" *Id*. That section of this Court denied summary judgment on the basis that the insured's contention "that the repairs were not completely of like kind and quality" and a "dispute regarding the builder's board" formed genuine issues of material fact. *Id*. This, to the extent that parties dispute whether completed repairs have restored a house to its pre-damaged condition, the

---

[6] It is not clear whether the unexcluded part of the estimate concerned damage for which repairs had begun (but not completed) or for which repairs had not begun. The order only states that "the damages, except *some* exterior damage to the siding had been repaired." *Lacroix*, 2010 WL 2265577, at *1 (emphasis added).

decision in *Lacroix* suggests that an estimate is admissible and the decision in *Hillard* suggests that summary judgment is inappropriate.

Here, the Stevens have at least raised a question as to whether the repairs are complete, as Mr. Stevens' testimony demonstrates:

> Q:   Okay. What work remains to be done on your house?
>
> A:   Well, I have to—well, there's still some painting that needs to be done. I need to have the rest of those windows replaced, and let me think. I need to replace my appliances that's running on one leg, I guess you could say. Let's see. I got to get my water softener. I got to get that replaced. We still have some trim work to do.
>
>        . . . .
>
> Q:   Anything else that still needs to be done?
>
> A:   I got to replace them two doors. I got to replace the sliding door in the garage and that walk-in door. I got to replace that, and the framing work for it, the walk-in door, because all that is falling apart now.
>
> Q:   Anything else?
>
> A:   Well, if I miss, I'm sure she'll bring it up.

(Rec. Doc. 20-11 at 44-45). This testimony, as well as the rest of the record before the Court, demonstrates that there is a genuine issue of material fact as to whether the repairs the Stevens made to their house have completely restored it to its pre-damaged condition. Further, the Stevens have provided competent evidence and testimony—in the form of their depositions and other materials—that demonstrates a dispute as to whether the actual cash value of their house exceeded the amount that Allstate paid.

Neither is the Court persuaded by Allstate's argument that judicial economy necessitates shifting the burden in this case and others like it. Specifically, Allstate states in its reply:

> Today, there are approximately 180 Hurricane Isaac NFIP cases pending in the Eastern District of Louisiana. Approximately

11

75 of these are set for trial within just the next four months. The great majority of these cases involve claims where the home has already been repaired, and repaired for a cost that is lower than what has already been paid in federal funds under the NFIP. Yet the plaintiffs in these cases still persist in claiming that they are entitled to recover even more federal funds under this Program. It is the crux of this Motion for Summary Judgment to test the propriety of such claims, and to test when those claims have been sufficiently presented so as to establish a plaintiffs' right to trial upon the merits in federal court.

(Rec. Doc. 32 at 1).

Specifically, Allstate suggests that the insureds should be required to establish—presumably through receipts and similar documentation—that the damage to their houses exceeded what they were paid by the insurer. It asks whether allowing the insureds to simply testify as to what they have spent or will need to spend is "a proper foundation for more than 100 NFIP trials." (*Id*. at 4). The import of its argument is that it would be onerous to require that the repair cost, which is a material fact, be established at trial.

The Court is disinclined to increase the Stevens' burden on summary judgment simply because it would be more convenient for Allstate—or, for that matter, the Court. The fact that there are more than 100 similar cases pending does nothing to alter the significance of each. The Stevens seek only to recover that which they are owed under their contract with Allstate. They have been placed in the unenviable position of having to repair their own house after a catastrophic event and, if their allegations are sound, they have painstakingly worked to repair that house with less than the necessary resources. This is not to say that there may be instances in which an insured is incapable of meeting its burden on summary judgment, only that the Stevens' burden should not be—nor could be—increased merely because they are two among many others.

## IV.    CONCLUSION

For these reasons, **IT IS ORDERED** that Allstate's motion for summary judgment (Rec.

Doc. 20) is **DENIED**.

New Orleans, Louisiana, this 5th day of May, 2014.

UNITED STATES DISTRICT JUDGE

13